We'll move now to our final oral argument today. This is Appeal 22-2830, Norberto Torres v. Kent Brookman et al. Mr. Williams will begin with you, oral argument on behalf of the appellant. May it please the Court. Brian Williams for the appellant, Norberto Torres. This Court should reverse the decision below that granted summary judgment for defendants because the conditions in Mr. Torres' segregation cell, a toilet that was leaking feces, the presence of mold and insects and rust, and the denial of bedding for several days was an atypical and significant hardship. And contrary to defendants' new arguments on appeal, there was competent evidence at summary judgment that created material fact disputes. Mr. Torres has a liberty interest in the conditions of his confinement. And contrary to the District Court's decision below, that was wrong for two reasons. First, the District Court improperly considered the length of Mr. Torres' sentence when conducting this inquiry. And second, the District Court wrongly weighed the combination of the length of Mr. Torres' sentence with the conditions of his confinement. Mr. Williams, the record here is a bit of a challenge. We've got certain allegations in the complaint. Then we've got Mr. Torres' deposition. Then we've got this filing that comes in response to summary judgment. We've got the response, an affidavit, and then a jurat, which talks about Illinois rather than federal. Should part of our disposition here depend on whether or not there's consistency in the allegations made with regard to, for example, feces in the cell? There's ample evidence in the record, Your Honor, that there was feces in the cell. And there's three places that you can look. The first you mentioned at Appendix page 11, the allegation of the complaint, which Mr. Torres incorporated by reference in his response to summary judgment. Second, Your Honor, would be a letter that Mr. Torres wrote to the warden. That's at Appendix page 28. And in that letter to the – well, let me start, actually, go back for one moment and just put in Mr. Torres' words his descriptions of the conditions of the cell. And this is from where? And this is at page 11 of the appendix in his complaint. He said that he, quote, showed the warden when he flushed the toilet, smelly water would come out of the bottom. Also, a small amount of feces when he and his cellmate took a bowel movement. That's in the complaint, which, again, at page 171 of the appendix, he incorporates that reference. He refers back to those allegations. Second, Your Honor, is – Your Honors, is a letter that he wrote to the warden. And in that letter he said, quote, I showed you the mold and the leaking, smelly toilet. That was attached and also was incorporated into his – excuse me, was attached to the complaint and was also incorporated by reference in his response to the motion for summary judgment. And third, in the response itself at page 171 of the appendix, he also refers to these allegations again. He says that his, quote, due process was violated in that the conditions of his confinement was inhumane in which the toilet to his cell was leaking underneath with toilet back flush. There were signs of mold and mildew and insects everywhere. Why doesn't it get into the deposition then? So if you look at the question that was asked, Your Honor, this is at page 120 to 122. The question was not asked what were the conditions that you experienced in the cell. There was a broader question that was asked about what his claims were. And he does go through some of the issues that were in the cell. He does talk about the toilets not functioning and the mold and the mildew. But it wasn't a question that was asking him like happened in some other depositions in similar cases where they specifically asked what were the conditions? What are you complaining about here? And a defendant, excuse me, a pro se plaintiff doesn't have to repeat himself in multiple filings in order for there to be competent evidence. And on that point, Your Honor, I think it's worth noting that the district court itself found that there was competent evidence. On pages 8 and 9 of its decision, it refers to the evidence before the court that it was relying on. And it cited specifically to the response to the motion for summary judgment. If I could go back to the first point, Your Honor, this issue of the district court taking into account the length of Mr. Torres' sentence. That has to be wrong as a matter of law. Prisoners with longer sentences do not have fewer constitutional rights. But if you take that to its logical conclusion, that's exactly what the district court held and what the government's position here would lead to. Counsel, if we do find a liberty interest, what's your violation? What do you think was missing in the adversarial, the informal non-adversarial due process? There are at least two issues, Your Honor. First would be the refusal to allow him to present witnesses. But not only that, the complete failure to give any reason for that. So that's the first part of it. And the second part of it was also that he wasn't given any of the evidence below that was relied on in his disciplinary proceeding. So Mr. Torres noted that he didn't get the gain questionnaire that he had allegedly filled out. Nor was he given the documents that they used for the handwriting example that they allegedly used to compare the gain questionnaire and his handwriting to the other documents. And so there's those two issues. And, Your Honor, even further, the grievance office itself at pages 150 and 151 of the appendix expunged this infraction because they found it was procedurally improper. And so unlike some of this court's other decisions where there wasn't necessarily a due process issue, those cases didn't involve one like here where the state grievance office itself found a violation of due process. And, again, the district court didn't find an issue on the procedural due process. It found that there were disputes of fact on some of these procedural issues and really turned to the liberty interest. And that liberty interest analysis was really the crux of the district court's opinion. And the district court's analysis on that liberty interest was wrong for a few reasons. Besides the issue of focusing on the length of Mr. Torres's sentence, he also didn't give sufficient credit to the issues of the cell and particularly the human feces in the cell. This court in Williams v. Brown, it's an unpublished decision, but in that decision this court said that if the allegations in the plaintiff's complaint were true, that he had been, quote, subjected to feces and urine, that would be sufficient to state a liberty interest. And that also shouldn't be controversial. Several courts, both in other circuits but also in district courts within this circuit, have found that. And, in fact, in two cases in the district court involving these very defendants, that's Basemore v. Brookman and Neal v. Vieth, both district court decisions where in one of them related to this particular facility, there were feces on the wall. And the district court in that case determined that that was sufficient to implicate a liberty interest. And that should be the case. And in neither of those cases below did the district court have concerns with the evidentiary standard, even though in both of those cases, particularly I believe in the Brookman case, there was an issue that the plaintiff had only put his allegations in the response as opposed to in a formal affidavit. But the district court still credited that under this court's precedence that we don't hold pro se plaintiffs to the same standard. And on these facts and those conditions, the district court erred in finding that there wasn't a liberty interest. With that, I'd like to reserve the remainder of my time for rebuttal. Very good. Thank you, Mr. Williams. Mr. Beauchat, we'll move to you now for argument on behalf of the appellee. Thank you, Your Honor. May it please the Court. My name is Frank Beauchat, and I represent the defendants. This court can affirm summary judgment on several grounds, but I intend to start with the one that's the most straightforward, which is that even if the challenged discipline did implicate a protected liberty interest, the disciplinary hearing complied, comported with due process under this court's decisions, most notably in Adams. In Adams, this court held that an inmate who does not lose sentencing credit is entitled only to informal, non-adversarial due process. The court then explained that informal, non-adversarial due process consists of adequate notice and an opportunity to present his argument to the decision maker. Under the facts of that case, the court held that due process was not violated because the plaintiff did not ultimately lose any sentencing credits, and he was given the opportunity to orally present his arguments to the decision makers. Adams is directly on point with this case. Here, the plaintiff also did not lose any sentencing credits, and therefore the informal due process is the standard that applied. The plaintiff doesn't dispute that. He may not have lost, you know, any good credits, but he had to spend three months in that filthy cell. That's true, Your Honor, but in Adams and in other cases like Ely and Westifer, this court, you know, this court has recognized that the amount of process that is required is dependent upon whether or not the plaintiff, the inmate, loses sentencing credits. In fact, in Whitlock, which is one of the cases that the plaintiff cited in their reply brief, this court explained that sort of the reason for the wolf requirements, which include a limited right to call witnesses, is those requirements are there to protect an inmate's very important interest in not losing sentencing credits. And so under Adams and this court's other cases, they compel the conclusion that the plaintiff received the adequate informal due process here. Again, the two points of contention are essentially identical to what was in Adams in both cases. The plaintiff argued that he was denied the opportunity to call witnesses without reasoning. In Adams, the other evidence was video evidence here. It was the evidence of the questionnaire and handwriting evidence. Those are very much analogous. And so... Well, yes, I mean, that's what this court held in Adams based on Hewitt and consistent with other cases. There, the process that the plaintiff said that he wasn't provided with was the opportunity to present witnesses and to see the video evidence. And even under the informal process that's contemplated in these cases, there is process. You know, the plaintiff does get notice here. He got eight to nine days of notice ahead of time. The plaintiff was also given the opportunity to present his arguments orally to the decision maker. I mean, in Adams, this court, citing Hewitt, pointed out that a written statement to that effect would usually be sufficient. But here he also, he was able to do it in person. And in the grievance process, there's also then, you know, later reviews of the decision, which in this case did ultimately result in reversing the decision. Mr. Bestrat, same question, similar question I posed to Mr. Williams. The record we have here is not crystal clear. We've got the complaint, and Mr. Williams has helpfully given us the record sites. We've got a deposition, which doesn't mention some of the words we've indicated in the past might reach that level of being a conditions of confinement claim. Then we've got this response to the summary judgment, which is, looks like two or three documents smashed together. Response, affidavit, and then the jurat, not a federal declaration under penalty of perjury. What are we to do with this record from the state's perspective? Well, I think there's two things this court can do. First is to interpret the declaration, even though it wasn't a federal declaration, I'll call it a declaration just I guess for simplicity, that the declaration applied only to the affidavit and not the response that preceded it. And then also secondarily, that even, but even if this court considered, you know, the response and the complaints and the letter, that it should find that there was no protected liberty interest anyway. Onto the declaration, I think what you have is you had a memorandum of law that was followed by an affidavit of service that was then followed by the plaintiff's affidavit. And then that was followed by the declaration. Many of the allegations in the affidavit were included in the response itself. And so I think that indicates that the plaintiff had intended for the affidavit to be separate from the response itself. Otherwise, there would have really been no purpose to adding the affidavit. And therefore, that the declaration applied only to the affidavit. But also, if this court disagreed with that and considered everything in the response as well, I think we would still end up in the same situation where there is no protected liberty interest because the allegations were very minimal and vague. Really, the most, I guess, specific allegations are probably in the complaint. That's really the only point where the plaintiff had specifically mentioned anything about feces. And there he says that there was a small amount of feces when the toilet was flushed at certain times. And from this problem existing so long, it created smelly mold on the side of the toilet. The smelly mold on the side of the toilet was then referenced again in the letter. May I go back with you to Adams for a moment? Yes, Your Honor. Yeah. That's a very unique case, you know, in that the disciplinary proceeding in question was one of eight proceedings that later led to the prisoner's transfer to long-term department-wide segregation. And, you know, the Supreme Court and this court have distinguished such transfers and reclassification decisions from the run-of-the-mill disciplinary decisions and have really emphasized that the former require only a very informal process and limited right to be heard. And by contrast, this case was the more typical disciplinary case in which a factual determination was made for disciplinary purposes. And, of course, you know, he was assigned to segregation as a punitive matter. And in such cases, we have always said, to my knowledge, that a prisoner has a right to call witnesses on his behalf so long as the witness requests are consistent with institutional safety, you know, with prison safety. He was denied that right without any reason being given. So it seems to me there is a viable claim for denial of procedural due process. A couple of points in response, Your Honor. One is that the opinion in Adams, I don't think, drew that distinction. It really focused on whether or not there was a loss of sentencing credit. That was the defining line that the court followed. And that decision is reflected in this court's subsequent decision in Ely, which came out this summer, and it's also consistent with Westifer. That that's the point at which the court draws the distinction between when the more formal wolf process is required and whether the more informal non-adversarial process is required. And I know this isn't determinative, but I would be remiss if I didn't point out that the defendants have not conceded that the plaintiff requested witnesses and that his request was denied without any explanation. There was a question of fact on that. We've argued that he didn't request witnesses. And as in Ely, I think there's no documentary evidence showing that he did. His assertion, I believe, is that at the hearing itself, he requested witnesses. So I just want to make clear that we're not conceding that. And I know I'm running out of time, so I did want to briefly respond to the point that opposing counsel raised about the length of sentence. Whatever error the district court might have made by considering length of sentence, the district court then went on to consider the conditions of confinement in this case. So even if this court were to agree with the plaintiff that the district court shouldn't consider the length of the actual criminal sentence, that would be a harmless error because it didn't factor into the ultimate decision. So unless your honors have any further questions, we would ask that you affirm. Thank you, Mr. Bestrat. We'll now move Mr. Williams back to you for rebuttal. Your honors, if defendant's position is correct, Mr. Torres could have spent 10 years in segregation, waist deep in feces, and no more process would have been due. That isn't right under this court's precedence, and that shouldn't be your decision today. This court should instead continue the line it started to draw in Williams v. Brown, where if a prisoner is subjected to a cell that's riddled with feces, that implicates a liberty interest. And in that situation, whereas here there's been a procedural violation that's been recognized by the state grievance office, that is sufficient to determine that the prisoner's 14th Amendment due process rights were violated. For those reasons, we ask this court to affirm. Excuse me, to reverse.  Thank you, Mr. Williams. Thank you, Mr. Bestrat. Mr. Williams, you and your firm were appointed counsel for this case, and you have the great thanks of this panel and the court. Excellent advocacy by both sides. Thank you very much. And the court will stand at recess.